United States District Court
District of Massachusetts

```
_____
                             )
Matthew A. Cummings,         )
                             )
          Plaintiff,         )
                             )
     v.                      )
                             )
City of Newton and Setti D.  )    Civil Action No.
Warren in his individual and )    15-13462-NMG
official capacities,         )
                             )
          Defendants.        )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves allegations of tortious and
unconstitutional actions arising out of the termination of the
former Police Chief of the City of Newton.  Matthew Cummings
("plaintiff") brings this suit against the City of Newton and
against Mayor Setti D. Warren, in both his individual and
official capacities, (collectively "defendants") alleging 1) a
violation of procedural due process under 42 U.S.C. § 1983, 2) a
violation of substantive due process under 42 U.S.C. § 1983, 3)
a violation of the Massachusetts Civil Rights Act ("MCRA"),
M.G.L. c. 12, § 11I, 4) intentional interference with
advantageous relations, 5) breach of the covenant of good faith
and fair dealing and 6) intentional infliction of emotional
distress.

Pending before the Court is defendants' motion for summary judgment.  For the reasons that follow, defendants' motion will be allowed.

## I.    Background

In March, 2009, Matthew Cummings and the City of Newton ("Newton" or "the City") entered into an employment contract for Cummings to serve as the Newton Chief of Police.

In September, 2011, Vincent Nguyen ("Nguyen"), a clerk in the Office of the Chief of Police, made an allegation of theft against Jeanne Sweeney Mooney ("Mooney"), who was plaintiff's Executive Secretary.  That same month, Mooney was placed on paid administrative leave pending investigation.  Cummings believed that there was probable cause to arrest Mooney for theft.  The Human Resources Department for the City initiated an independent investigation into the alleged larceny.  In January, 2012, the chosen investigator found probable cause to arrest Mooney for larceny but she was not then arrested.

Mooney served the City with a demand letter pursuant to the Massachusetts Tort Claims Act, M.G.L. c. 258, § 4, on May 21, 2012.  That demand letter contained allegations that Cummings had made inappropriate remarks to Mooney and that on one occasion had kicked her, causing injury.  The alleged events were said to have taken place during the summer of 2010.  On May 22, 2012, the City hired Edward Mitnick ("Mitnick") of Just

Training Solutions, LLC to investigate the allegations in Mooney's demand letter. In August, 2012, Mitnick concluded his investigation and found that there was "sufficient credible evidence" to believe that Mooney's allegations against Cummings were true.

Meanwhile, on or about May 31, 2012, former City Solicitor Donnalyn Kahn ("Kahn"), Cummings and various City officials discussed the theft allegations against Mooney. A few days later, the Mayor's office contacted Cummings, and informed him that the Mayor wished to discuss those allegations. The parties dispute whether Warren or Cummings made the final decision but the Newton Police Department, in conjunction with the Middlesex District Attorney's office, filed a criminal complaint against Mooney in June, 2012. On July 16, 2012, Mooney filed a verified discrimination complaint with the Massachusetts Commission Against Discrimination. That complaint alleged that Warren, Kahn, Cummings and former Newton Police Lieutenant Edward Aucoin filed the criminal charges against Mooney in retaliation for her having reported the misconduct of Cummings.[1]

On August 29, 2012, Warren notified Cummings that he was being "placed on administrative leave, pending a termination hearing for cause" pursuant to the terms of his employment

---

[1] In May, 2013, Mooney was acquitted after a jury trial in Framingham District Court.

agreement.  That same day, Warren held a press conference
wherein he stated,

> [t]he names the chief called this employee, and the
> physical action of kicking her, is inappropriate and
> unacceptable. . . . It's just purely unacceptable in this
> city, is not tolerated and will not be tolerated.

On September 11, 2012, the Mayor sent plaintiff a letter
providing notice of the charges warranting termination.  The
letter indicated that Cummings would be charged with 1) "conduct
unbecoming a Police Chief" and 2) "inability satisfactorily to
perform the services" required of a Police Chief.  Mayor Warren
designated Robert R. Rooney ("Rooney"), the City's Chief
Operating Officer, to preside over the hearing that was held on
October 10, 2012.  The following day, the Mayor notified
Cummings that

> Pursuant to paragraph 5 of your current Chief of Police's
> contract and after a hearing and findings of fact by
> Hearing Officer Robert R. Rooney, you are hereby terminated
> as Chief of Police for the City of Newton.

Pursuant to the employment agreement, Cummings appealed the
decision to an arbitrator.  One year later, on October 10, 2013,
the arbitrator issued a decision in which he found that Cummings
did not engage in conduct unbecoming a police chief and ordered
plaintiff reinstated to his position as Chief of Police with
back pay.  The City appealed that decision to the Massachusetts
Superior Court pursuant to M.G.L. c. 150C § 11.  The Superior
Court remanded the decision to the arbitrator.  In March, 2015,

the arbitrator again found that the City did not satisfy its burden of proving that Cummings engaged in conduct unbecoming a police chief.  This time, however, the arbitrator ordered as a remedy that the City make Cummings whole for lost benefits, including back pay, but that "reinstatement is not awarded because Mr. Cummings' employment contract . . . expired January 12, 2014."

### A.  Employment Agreement

The employment agreement between Cummings and the City, entitled "Chief of Police's Contract", provided that the City would employ Cummings as its Chief of Police from January 13, 2009 until January 12, 2014, "unless earlier terminated under the provisions" of the agreement.  The contract also provided that

> [t]he city, acting through its mayor, may terminate
> Cummings for cause after a hearing."  "Cause" is defined to
> include "Cummings' failure, refusal or inability
> satisfactorily to perform the services required of him
> hereunder . . . [and] . . . conduct unbecoming a Police
> Chief . . . .

If the City proposed to terminate the contract, the agreement required that "Cummings shall receive written notice of the charges against him at least seven days prior to a hearing."  The contract afforded Cummings the right, during the hearing, to be

> represented by counsel, to question, confront and cross-
> examine witnesses, to introduce evidence and to conduct

oral arguments."

The hearing officer, who was to be the Mayor or his designee, was to hear and consider the evidence and cause for dismissal had to be established "by substantial evidence". The agreement contained an arbitration clause that provided that

> [a]ny dispute concerning . . . a claim to breach, or the termination of this Agreement, or the termination of employment of the Chief of Police, shall be resolved exclusively by arbitration under the Voluntary Labor Arbitration Rules of the American Arbitration Association.

Finally, the agreement permitted the City to terminate Cummings' employment, at the sole discretion of the Mayor, during the fifth year of Cummings' term.

## II.  **Analysis**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in

dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**A.  Count I: 42 U.S.C. § 1983 – Procedural Due Process**

Defendants assert that plaintiff has failed to show that the procedural safeguards contained in his employment contract were constitutionally deficient. Plaintiff maintains that defendants deprived plaintiff of his employment without due process of law through their misconduct, malicious motivation, intentional delays and failure to comply with court orders.

Section 1983 creates a cause of action against persons who, under color of state law, deprive a United States citizen of any "rights, privileges, or immunities secured by the Constitution and laws." See 42 U.S.C. § 1983. The Fourteenth Amendment

provides that

> nor shall any state deprive any person of life, liberty, or property, without due process of law.

U.S. Const. amend. XIV, § 1.

To prevail on a procedural due process claim under § 1983, a plaintiff must demonstrate that: 1) the plaintiff has been deprived of a protected interest and 2) that deprivation was accomplished without due process of law. <u>Perez-Acevedo</u> v. <u>Rivero-Cubano</u>, 520 F.3d 26, 30 (1st Cir. 2008).

The parties agree that Cummings possessed a property interest in his employment by virtue of his employment agreement. <u>Cf.</u> <u>Nwaubani</u> v. <u>Grossman</u>, 199 F. Supp. 3d 367, 380 (D. Mass. 2016), <u>aff'd</u>, No. 16-2105, 2017 WL 3973915 (1st Cir. June 21, 2017) (finding that for-cause termination provision created property right for state university professor). Thus, the issue is whether the City and Mayor deprived Cummings of that interest without adequate process.

"Pre-termination and post-termination proceedings are not evaluated for constitutional adequacy in isolation" from each other. <u>Senra</u> v. <u>Town of Smithfield</u>, 715 F.3d 34, 39 (1st Cir. 2013). A post-deprivation remedy may cure a pre-deprivation procedural inadequacy caused by the random or unauthorized conduct of defendants. <u>Hadfield</u> v. <u>McDonough</u>, 407 F.3d 11, 21 (1st Cir. 2005).

Because Cummings received adequate post-termination remedies his procedural due process claim fails.

**1. Pre-termination procedures**

Plaintiff asserts that the pre-termination procedures, including the independent investigation and hearing, were inadequate. He puts forth the theory defendants attempted "to make plaintiff a scape goat (sic) for the claims asserted against the defendants" in Mooney's demand letter. Accordingly, Cummings explains, "the defendants initiated a sham investigation" and appointed Rooney, "who answers directly to defendant Warren" to preside over the termination hearing.

The Fourteenth Amendment requires "at a minimum, some kind of notice and some kind of opportunity to be heard." Clukey v. Town of Camden, 717 F.3d 52, 59 (1st Cir. 2013) (citing Dusenbery v. United States, 534 U.S. 161, 167, (2002)) (additional citation omitted). A termination hearing "need not be elaborate" but must provide the employee

> (1) oral or written notice of the charges against him, (2) an explanation of the employer's evidence, and (3) an opportunity to present his side of the story.

Chmielinski v. Massachusetts, 513 F.3d 309, 316 (1st Cir. 2008)) (internal quotation marks omitted) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985)).

Plaintiff received notice of the charges against him in the letter he received on September 11, 2012. He was given an explanation of the employer's evidence in the form of an

-9-

executive summary of the investigation and the investigative report of the independent investigator. Cummings was represented by counsel at the hearing and called three witnesses. He was present at the hearing but chose not to testify. Nevertheless, plaintiff maintains that he did not receive a real opportunity to present his side of the story because Robert Rooney, who presided over the hearing, had made up his mind before it started.

As a general rule, "it is not required that a hearing be conducted before an impartial decisionmaker." <u>Acosta-Sepulveda</u> v. <u>Hernandez-Purcell</u>, 889 F.2d 9, 12 (1st Cir. 1989). A contract may, as it does here, provide that the Mayor may preside over the hearing. <u>See</u> <u>id.</u> ("In fact, the hearing may be presided over by the employer himself.") (citing <u>Feliciano-Angulo</u> v. <u>Rivera Cruz</u>, 858 F.2d 40, 44 (1st Cir. 1988)). To allege that intolerable partiality arose, a plaintiff

> must overcome the presumption that administrators are men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances, and must demonstrate an actual risk of bias or prejudgment.

<u>Brasslett</u> v. <u>Cota</u>, 761 F.2d 827, 837 (1st Cir. 1985) (internal quotation marks omitted) (citing <u>Withrow</u> v. <u>Larkin</u>, 421 U.S. 35, 56 (1975)). The actual risk "must be shown by a specific demonstration of partiality." <u>Duhani</u> v. <u>Town of Grafton</u>, 52 F. Supp. 3d 176, 182 (D. Mass. 2014) (internal quotation marks

omitted) (citation omitted).  Surveying the evidence in the
light most favorable to Cummings, plaintiff has made that
demonstration.

Plaintiff objects that the Mayor selected a "designee who
answers directly" to him.  The employment agreement provided,
however, that the hearing officer was to be "the mayor or his
designee".  If the Mayor himself was contractually permitted to
preside over the hearing, a fortiori the designation of Riley,
the chief operating officer of the City, was not inappropriate.
Riley's position as chief operating officer does not demonstrate
a specific demonstration of partiality. Cf. id. (fact that
person who made original decision to terminate employee also
served as appointing authority, hearing officer and fact witness
insufficient to demonstrate adjudicator was partial).

On the other hand, Cummings alleges that at the press
conference prior to the hearing, Warren "had already clearly
stated his intent to terminate plaintiff."  A plaintiff may
establish that a hearing was insufficient where "the outcome of
his pre-termination hearing was predetermined." Id. at 183.  The
Mayor's statement that Cummings' behavior is "unacceptable" and
"is not tolerated and will not be tolerated" in the City is not
a pellucid statement that the Mayor intended to terminate
plaintiff.  The Mayor's firm statement was not dispositive.  It
could have been interpreted as anticipating discipline in the

form of a public reprimand or a poor evaluation on Cummings'
contractually required performance evaluations or termination.

At the summary judgment stage, however, the Court views the
evidence in the light most favorable to Cummings and draws all
reasonable inferences in his favor. Del Valle-Santana v.
Servicios Legales De Puerto Rico, Inc., 804 F.3d 127, 128 (1st
Cir. 2015). Plaintiff points to the proceedings before Riley to
demonstrate that Riley's mind was already made up before the
hearing. He notes, for instance, that Riley sided with the City
on its motion in limine to limit the testimony of Mooney. The
arbitrator found that the excluded testimony, concerning
Mooney's possible motivation, was "absolutely and obviously
necessary to evaluate her credibility." Finally, Cummings notes
that his motion requesting that Riley recuse himself was denied.

Viewing the facts in the light most favorable to Cummings,
"the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." Taylor v. Am. Chemistry
Council, 576 F.3d 16, 24 (1st Cir. 2009) (quoting Chadwick v.
WellPoint, Inc., 561 F.3d 38, 43 (1st Cir. 2009)). Accordingly,
a genuine issue of material fact exists as to whether Cummings
was afforded an adequate pre-termination hearing. See id.

### 2. Post-termination procedures

Notwithstanding the procedural deficiencies in Cummings'
pre-termination hearing, a plaintiff must demonstrate that no

-12-

adequate post-deprivation remedies were made available in order
to succeed on a procedural due process claim.  See Cronin v.
Town of Amesbury, 81 F.3d 257, 260-61 (1st Cir. 1996) (per
curiam).  Plaintiff contends that the City's vexatious appeals,
combined with the pre-termination infractions, violated his
right to due process.  Defendants respond that Cummings was
afforded due process by successfully availing himself of
appellate remedies.

Cummings received adequate post-deprivation remedies.  He
appealed his termination to an arbitrator who granted him
sufficient relief.  Indeed, he prevailed twice in his post-
termination arbitral proceedings against the City.  Plaintiff
alleges, without citation to any case law, that the City causing
the arbitral hearing to conclude four months later than
scheduled constituted "an unreasonable pattern of delays".  But
see Alton Land Trust v. Town of Alton, 745 F.2d 730, 732 (1st
Cir. 1984) (two-and-a-half year litigation not inordinate
delay).

Plaintiff accuses the City of appealing the arbitrator's
decision on "frivolous grounds."  Although both the Superior
Court and Appeals Court sided with Cummings, neither court
deemed the City's argument "frivolous", nor did plaintiff seek,
much less receive, sanctions against the City for filing a
frivolous appeal.  Cf. Ressler v. Deutsche Bank Tr. Co. Americas,

-13-

92 Mass. App. Ct. 502 (2017) (declining to impose sanctions for frivolous appeal after determining that appellant's arguments lacked merit).

Finally, plaintiff alleges that defendants have "failed to make plaintiff whole despite several court orders mandating them to do so." Plaintiff does not specify in what way he has not been made whole. He suggests that he was denied "the opportunity to return to his position as chief of police" even though the arbitrator, on remand, determined that reinstatement was not an appropriate remedy. In any event, Cummings' remedy for such an alleged violation is an order to enforce the judgment from the appropriate forum, not a procedural due process claim in this one. See Cronin, 81 F.3d at 260 (delay did not render post-deprivation remedy inadequate because "the possibility" of plaintiff receiving the remedy remained).

Because plaintiff was afforded adequate post-deprivation remedies, his claim of a procedural due process violation fails as a matter of law. Accordingly, defendants' motion for summary judgment will, with respect to Count I, be allowed.

**B.    Count II: 42 U.S.C. § 1983 - Substantive Due Process**

Plaintiff contends that the intentional delay and frivolous appeals by the City, combined with the pre-termination abuses, are so egregious as to be "conscious shocking" in violation of the due process clause which, in turn, amounts to a violation of

-14-

42 U.S.C. § 1983.  Defendants respond that the plaintiff offers "no facts to support any egregious behavior" by the Mayor or City.

Substantive due process protects against arbitrary and capricious deprivations of protected interests. Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994).  To prevail on a substantive due process claim, a plaintiff must allege that the defendants' actions were "so egregious as to shock the conscience." Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 639 (1st Cir. 2013).  To shock the conscience, the conduct must be "truly outrageous, uncivilized, and intolerable." Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999).

Cummings was terminated from his employment in a hearing that may have been inadequate.  He then appealed that decision and was awarded reinstatement by an independent arbitrator.  Plaintiff fails to cite a case even faintly analogous to these facts in which a substantive due process claim succeeded.  That is not surprising as the defendants' actions here do not "remotely approach the level of a substantive due process violation." Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 16 (1st Cir. 2011).

Defendants' motion for summary judgment will, with respect to Count II, be allowed.

**C. Count V: M.G.L. c. 12 § 11I – Massachusetts Civil Rights Act[2]**

Plaintiff maintains that the same conduct giving rise to the alleged violations of § 1983 also violate MCRA.  Defendant responds that plaintiff has failed to demonstrate that Warren threatened, intimidated or coerced Cummings.

Section 11I of the MCRA provides for a cause of action to any

> person whose exercise or enjoyment of rights secured by the
> constitution or laws of the United States, or of rights
> secured by the constitution or laws of the commonwealth,
> has been interfered with, or attempted to be interfered
> with, as described in section 11H . . . .

M.G.L. c. 12 § 11I.

Section 11H, in turn, specifies that the interference must take place "by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercsion . . . ." M.G.L. c. 12 § 11H.

To establish a claim under MCRA, a plaintiff must prove that 1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, 2) has been interfered with, or attempted to be interfered with and 3) that the interference or attempted

---

[2] Plaintiff advances this claim only against defendant Warren in his individual capacity.

interference was by "threats, intimidation or coercion". <u>Swanset</u>
<u>Dev. Corp.</u> v. <u>City of Taunton</u>, 423 Mass. 390, 395 (1996).

Threats, intimidation and coercion are defined such that:

> "Threat"...involves the intentional exertion of pressure to
> make another fearful or apprehensive of injury or harm.
> "Intimidation" involves putting in fear for the purpose of
> compelling or deterring conduct. ["Coercion" is] "the
> application to another of such force, either physical or
> moral, as to constrain him to do against his will something
> he would not otherwise have done."

<u>Planned Parenthood League of Massachusetts, Inc.</u> v. <u>Blake</u>, 417
Mass. 467, 474 (1994).

As explained above, plaintiff has not established that
Warren interfered with his constitutional due process rights.
Furthermore, he sets forth no specific facts demonstrating that
Warren threatened, intimidated or coerced him. Plaintiff
submits that Warren's press conference, designation of Riley as
the hearing officer and second termination of Cummings
constituted "consistent use of threats and coercive tactics."
Those allegations, however, "fall well short of the types of
coercive conduct" found in cases that have sustained a MCRA
violation. <u>See</u> <u>Horne</u> v. <u>City of Boston</u>, 509 F. Supp. 2d 97, 115
(D. Mass. 2007) (collecting cases).

Because plaintiff has failed to establish that defendant
interfered with his constitutional rights and failed to
demonstrate that Warren used threats, intimidation or coercion,
defendants' motion for summary judgment will, with respect to

Count V, be allowed.

### D. Count VI: Intentional Interference with Advantageous Relations

Cummings submits that defendants caused him harm by interfering with his employment contract. Defendants respond that plaintiff has failed to demonstrate that either Warren or the City acted with actual malice.

A claim of intentional interference with an advantageous business relationship must assert that 1) plaintiff had a business relationship or anticipated a contract of economic benefit, 2) defendant knew of the relationship, 3) defendant interfered with the relationship through an improper motive or means and 4) plaintiff suffered a loss of advantage as a direct result of defendant's conduct. Am. Private Line Servs., Inc. v. E. Microwave, Inc., 980 F.2d 33, 36 (1st Cir. 1992) (citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990)). To satisfy the third element, plaintiff must allege "wrongfulness beyond the interference itself." James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co., 112 F.3d 1240, 1250 (1st Cir. 1997) (citing Geltman, 406 Mass. at 816).

Such improper conduct may exist if a party "used threats, misrepresented any facts [or] defamed anyone" in the course of the interference. Geltman, 406 Mass. at 817. Where a plaintiff sues a municipal official or municipality, a plaintiff must show

that "actual malice, that is, a spiteful, malignant purpose, unrelated to the legitimate municipal interest" was the controlling factor in the interference. Cachopa v. Town of Stoughton, 72 Mass. App. Ct. 657, 661-62 (2008) (quoting Blackstone v. Cashman, 448 Mass. 255, 261 (2007)) (internal quotation marks omitted); cf. Blackstone, 448 Mass. at 265 (explaining that "actual malice" is a "higher standard" than "improper means").   Actual malice is "a burden placed on the plaintiff, not a defense that must be proved by the defendant." Blackstone, 448 Mass. at 261.

     The record includes evidence that the Mayor announced that Cummings' actions were "inappropriate and unacceptable" and "will not be tolerated".  It also shows that the City hired an independent investigator who, after investigation, found believed that Mooney's allegations against Cummings were valid. Viewing the evidence in the light most favorable to plaintiff, he may be able to demonstrate that the result of his pre-termination hearing was preordained.  His assertion that Warren set him up as a scapegoat to avoid the financial liability that could arise from Mooney's claims, on the other hand, relies on speculation instead of evidence.

     At the summary judgment stage, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 250 (footnote omitted)

-19-

(quotation omitted).  Instead, Cummings relies on conclusory
statements and speculation.  He may not "rest upon mere
allegation" but instead must "present affirmative evidence" that
defendants acted with a spiteful, malignant purpose. See id. at
256-57.  Cummings fails to point to any specific facts
demonstrating that defendants displayed actual malice.

Because plaintiff has failed to demonstrate that defendants
acted with actual malice, defendants' motion for summary
judgment will, with respect to Count VI, be allowed.

**E. Count VII: Breach of Good Faith and Fair Dealing**

Plaintiff argues that defendants breached the implied
covenant of good faith and fair dealing by affording him a
prejudicial hearing in the course of unreasonable post-
termination delays.  Defendants rejoin that Cummings availed
himself of the full benefit of the covenant through the remedial
process of arbitration.

In Massachusetts, all contracts contain an implied covenant
of good faith and fair dealing which provides that each party
involved will not

> do anything that will have the effect of destroying or
> injuring the right of the other party to receive the fruits
> of the contract.

K.G.M. Custom Homes, Inc. v. Prosky, 468 Mass. 247, 254 (2014).
"The scope of the [implied] covenant is only as broad as the
contract that governs the particular relationship." Ayash v.

-20-

<u>Dana–Farber Cancer Inst.</u>, 443 Mass. 367, 385 (2005).

Plaintiff, as permitted by his contract, appealed the termination decision to an arbitrator and twice received redress from that arbitrator. Accordingly, he was not denied the "fruits of the contract". In addition, the employment agreement at issue provided Cummings with "for cause" protection. A plaintiff cannot demonstrate a breach of the covenant of good faith and fair dealing where, as here, "an explicit contractual provision giv[es] the employee greater protection than the covenant." <u>Bertrand</u> v. <u>Quincy Mkt. Cold Storage & Warehouse Co.</u>, 728 F.2d 568, 571 (1st Cir. 1984); <u>see</u> <u>also</u> <u>Azzi</u> v. <u>W. Elec. Co.</u>, 19 Mass. App. Ct. 406, 410 (1985).

Defendant's motion for summary judgment will, with respect to Count VII, be allowed.

**F. Count VIII: Intentional Infliction of Emotional Distress[3]**

Plaintiff proposes that defendants' actions "amounted to extreme and outrageous conduct" sufficient to constitute the tort of intentional infliction of emotional distress. Defendants assert that, even if plaintiff's allegations were true, they would not constitute extreme and outrageous conduct.

---

[3] The Massachusetts Tort Claims Act bars recovery against a municipality or municipal officials in their official capacity for "any claim arising out of an intentional tort." M.G.L. c. 258, § 10(c). Accordingly, plaintiff may bring this claim only against defendant Warren in his personal capacity.

In the Commonwealth of Massachusetts, the tort of

intentional infliction of emotional distress may lie against

>   one who, without a privilege to do so, by extreme and
>   outrageous conduct intentionally causes severe emotional
>   distress to another . . . .

George v. Jordan Marsh Co., 359 Mass. 244, 255 (1971).

Conduct is extreme and outrageous if it is "beyond all

possible bounds of decency, and utterly intolerable in a

civilized community." Payton v. Abbott Labs, 386 Mass. 540, 437

(1982).  The actions must be so egregious that "the recitation

of the facts to an average member of the community would . . .

lead him to exclaim, 'Outrageous!'" Borden v. Paul Revere Life

Ins. Co., 935 F.2d 370, 380 (1st Cir. 1991); see also Foley v.

Polaroid Corp., Inc., 400 Mass. 82, 99 (1987) (quoting

Restatement (Second) of Torts, § 46, comment d (1965)).

The facts of this case do not approach that high standard.

The Massachusetts Supreme Judicial Court has adopted this

demanding test to limit

>   frivolous suits and avoid[] litigation in situations where
>   only bad manners and mere hurt feelings are involved.

Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976) (citation

omitted).

Plaintiff states that "the totality of the circumstances"

demonstrates extreme and outrageous conduct.  He provides no

case law in support of that claim.  Warren's actions included

-22-

holding a press conference, terminating the plaintiff and appealing an adverse arbitration decision.  Such conduct, even including embellishments which are not supported by the record, would not lead an average member of the community to exclaim, "Outrageous!"

Defendants' motion to dismiss will, with respect to Count VIII, be allowed.

**ORDER**

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 52) is **ALLOWED.**


**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated February 6, 2018